# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 14-cr-0118-1 |
| | : | |
| JUSTIN MICHAEL CREDICO | : | |
| | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                           **JUNE 29, 2026**

On July 26, 2024, Petitioner Justin Michael Credico filed a *pro se* Petition for Writ of Error

Coram Nobis, Alternatively, Audita Querela, or Jointly (the "Petition"). *See* ECF No. 301. For

the reasons set forth below, the Court will **DENY** the Petition (ECF No. 301).

## I.    BACKGROUND

On March 11, 2014, a grand jury returned a four-count indictment against Petitioner Justin

Michael Credico, charging him with two counts of threatening a law enforcement officer, in

violation of 18 U.S.C. § 115(a)(1)(B), and two counts of threatening an immediate family member

of a law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(A). *See* ECF No. 10. As alleged

in the indictment, Petitioner frequently made calls, left voicemail messages, and sent text

messages, emails, and faxes to law enforcement officers and their family members that contained

"taunting, obscene, and racially charged" messages and "included numerous threats." *Id.* ¶¶ 3, 5;

*see also id.* ¶¶ 6–8.

At trial, the Government planned to produce recordings of Petitioner's "allegedly harassing

and threatening voicemail messages." ECF No. 131 at 2. In advance of trial, the Court held a

*Starks* hearing, *see* ECF Nos. 104, 137, after which the Court found that the Government had

"proven the accuracy and authenticity of the recorded voicemail messages at issue for the purposes

of *Starks*." ECF No. 131 at 5 (emphasis omitted); *see also* ECF No. 195. After a three-day jury

trial, the jury ultimately returned a verdict of guilty as to all four counts. *See* ECF Nos. 209–212. On May 22, 2017, the Court sentenced Petitioner to 70 months' imprisonment, to be followed by a 3-year term of supervised release, a $400 special assessment, and a $2,500.00 fine. *See* ECF No. 230 at 2, 4, 6. The Third Circuit affirmed Petitioner's conviction on February 14, 2018. *See* ECF No. 271.

Petitioner pursued post-conviction relief. On August 31, 2017, Petitioner filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence, which he later supplemented. *See* ECF No. 256; *see also* ECF Nos. 263, 272, 276. On October 1, 2019, the Government filed a Response in Opposition to Defendant's Motions Under 28 U.S.C. § 2255. *See* ECF No. 286. On April 5, 2021, the Court issued a Memorandum Opinion and Order denying Petitioner's Motion Under 28 U.S.C. § 2255. *See* ECF Nos. 294, 295.

A few years later, on July 11, 2024, Petitioner filed a *pro se* Motion for Leave to File 28 U.S.C. § 2255 Out of Time, which he also described as a Rule 60(b) Motion. *See* ECF No. 298. The Court denied this motion without prejudice. *See* ECF No. 300.

On July 26, 2024, Petitioner filed a *pro se* Petition for Writ of Coram Nobis, Alternatively, for a Writ of Audita Querela, or Jointly. *See* ECF No. 301.[1] First, regarding the Petition for a Writ

---

[1] On August 8, 2024, Petitioner also filed a Petition for Writ of Error Coram Nobis and Writ of Audita Querela in the Court of Common Pleas of Chester County, which the state court mailed to the Eastern District of Pennsylvania. *See* ECF No. 303. In this second Petition, Petitioner listed a state case number of CP-15-cr-0003687-2012 and appears to seek a new trial in state court. *Id.* at 1; *see also* ECF No. 294 at 5 (discussing Petitioner's previous state court convictions in the Court of Common Pleas of Chester County).

A writ of coram nobis "is not available in a federal court as a means of attack on a state criminal judgment." *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (per curiam); *see also Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013) ("[F]ederal courts have no jurisdiction to issue writs of coram nobis with respect to state criminal judgments." (internal citations and quotation omitted)). Similarly, the writ of audita querela "does not grant subject matter jurisdiction to federal courts to review state court convictions." *Dukes v. Coleman*, No. 16-cv-1085, 2016 WL 6638884,

of Coram Nobis, Petitioner explains that he is seeking a new trial and is attempting to "re-raise[]" his scientific evidence arguments that were attempted" within his § 2255 motion.  ECF No. 301 at 4.  He contends that, "[a]t the *Starks* hearing," he raised arguments that the Government's voicemail recordings might be "'spoofed,' but no real scientific possibility at the time could bolster this" argument.  *Id.* at 5.  In his Petition, he explains that "such scientific evidence" is now available because there are "plenty of AI 'deep fake' possibilities [that] have now come to light since his trial" and technology to detect "spoofed deep fake[s]" exists.  *Id.* at 5–6.  According to Petitioner, the Government's voicemail recordings of him are "simply a re-recorded copy of the deep fake spoof[s]," which undermines the evidence introduced against him at his trial.  *Id.* at 6.

Second, regarding the Petition for a Writ of Audita Querela, Petitioner argues that there was an intervening change in the law, *Counterman v. Colorado*, 600 U.S. 66 (2023), that purportedly impacts his previous conviction and that he claims has a "retroactive holding."  ECF No. 301 at 7–8.  Petitioner contends that he was precluded at trial from raising arguments about his *mens rea* and the "conditional nature[] of threats (such as if-then statements)."  *Id.*  In Petitioner's view, *Counterman* now presents the opportunity "to correct manifest injustice [and] clear errors of a material issue of fact and law."  *Id.* at 10.

The Government did not file a response to the Petition, even though the Court invited it to do so.  *See* ECF No. 302.  The Petition is before the Court.

---

at *2 (W.D. Pa. Oct. 17, 2016), *report and recommendation adopted*, 2016 WL 6626181 (W.D. Pa. Nov. 9, 2016); *see also Quintana v. Nickolopoulos*, 768 F. Supp. 118, 120 (D.N.J. 1991) (finding that a writ of audita querela "is limited solely to *federal* criminal cases"); *Sifuentes v. Prelesek*, No. 03-cv-637, 2019 WL 13259381, at *2 (W.D. Mich. Apr. 16, 2019) (explaining that "*audita querela* cannot be used in federal court to review a state-court conviction").  Accordingly, the Court does not address Petitioner's second Petition (ECF No. 303) because it concerns his state convictions.

## II.    DISCUSSION

### A.  Petition for a Writ of Coram Nobis

The Court begins with the Petition for a Writ of Coram Nobis.  "A writ of error coram nobis is an 'extraordinary remedy'" that is rarely issued.  *United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022); *see also Carlisle v. United States*, 517 U.S. 416, 429 (1996) (noting that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate" (internal quotations and citation omitted)).  Traditionally, a writ of coram nobis has "been used to attack convictions with continuing consequences when the petitioner is no longer 'in custody' for purposes of 28 U.S.C. § 2255."  *United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000); *see also Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013) ("A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief").  The standard for obtaining relief through a writ of coram nobis "is more stringent than that applicable on direct appeal or in habeas corpus in recognition of judicial interests in finality and efficiency."  *Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020) (internal quotations and citation omitted).

The Third Circuit has set forth "five prerequisites[,]" all of which must be satisfied in order to obtain coram nobis relief.  *Id.*; *see also De Castro*, 49 F.4th at 842 ("[A] petition must be denied if even one element is not satisfied").  Those prerequisites are: "the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial; and (5) asserted error(s) of a fundamental kind."  *Ragbir*, 950 F.3d at 62.  "The fifth prerequisite is two-pronged: there must be an error, and the error must be fundamental."  *Id.* at 63.  For an error to be fundamental, it must be a defect that "completely undermine[s] the jurisdiction of the court,

4

rendering the trial itself invalid." *Id.*; *see also De Castro*, 49 F.4th at 846 ("An error is fundamental if it would result in a 'complete miscarriage of justice.'" (citation omitted)). "Errors that can be remedied through a new trial do not usually fall within the writ." *Ragbir*, 950 F.3d at 63; *see also De Castro*, 49 F.4th at 846.

With this framework in mind, the Court turns to the Petition. Following his imprisonment, Petitioner's term of supervised release commenced on April 5, 2019, and terminated on April 4, 2022. *See* ECF No. 297 at 2; *see also* ECF No. 298 at 2 (acknowledging that he is "no longer under any fed supervision"). Petitioner thus satisfies the first prong because he is no longer in custody. *See United States v. Fattah*, Nos. 23-1064, 23-1198, 23-1531, 2023 WL 4615300, at *2 (3d Cir. July 19, 2023) ("[S]upervised release counts as custody."). However, the Petition fails at the second prong because Petitioner did not articulate what consequences, if any, he supposedly continues to suffer from his conviction. *See, e.g.*, *De Castro*, 49 F.4th at 840 (explaining that a petitioner was seeking to "undo . . . collateral immigration consequences" from his conviction).

Even assuming that Petitioner's 2017 conviction still carries certain continuing consequences, he fails at least two other prongs. Petitioner did not show that he had no available remedy at the time of his conviction. To the contrary, he previously attempted to seek relief on similar grounds. *See United States v. Lyons*, 173 F.4th 491, 497 (3d Cir. 2026) (explaining that a petitioner "has no sound reasons if his argument was available to him earlier on" (citation omitted)). Indeed, Petitioner acknowledges that he is "re-rais[ing] his scientific evidence arguments" regarding "spoofing" that were previously rejected by the Court. ECF No. 301 at 4–5. Moreover, the fact that there are now supposedly examples of "deep fake spoof[s]" created through artificial intelligence, *see id.* at 5, and that there may be new technologies to detect spoofed recordings does not countenance reopening Petitioner's previous conviction, especially when he

has presented no evidence suggesting that the recordings were inauthentic.  *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 62 (2009) ("The availability of technologies not available at trial cannot mean that every criminal conviction . . . is suddenly in doubt.").  Under these circumstances and in consideration of finality, "[t]he extraordinary remedy of coram nobis relief [is] therefore not warranted."  *United States v. Carey*, No. 24-1612, 2025 WL 3187921, at *2 (3d Cir. Nov. 14, 2025) (per curiam) (affirming denial of coram nobis relief where the petitioner made an "identical claim" in a prior motion); *see also Ragbir*, 950 F.3d at 63 (explaining that coram nobis requires that "a party was unable to make certain arguments at trial or on direct appeal").

Furthermore, Petitioner failed to establish that there was a fundamental error with respect to the Government's use of voice recordings.  Petitioner merely speculates—without any evidentiary basis—that the Government may have used "deep fake spoof[s]" of his voice at his trial; nor does Petitioner even attempt to identify which recordings were purportedly spoofed.  ECF No. 301 at 6; *see also* ECF No. 131 at 3 (noting that Petitioner admitted at the *Starks* hearing that "at least one of the recordings was accurate, and identified his own voice on multiple recordings").  Petitioner's speculation fails to rise to the level of establishing a "complete miscarriage of justice[,]" such that extraordinary relief may be warranted.  *De Castro*, 49 F.4th at 846.  Accordingly, the Court declines to issue a writ of coram nobis.

### B.  Petition for a Writ of Audita Querela

Next, the Court turns to the Petition for a Writ of Audita Querela.  *See* ECF No. 301 at 7.  Like writs of coram nobis, "a writ of audita querela is an extraordinary remedy."  *United States v. Potts*, 765 F. App'x 638, 640 (3d Cir. 2019) (per curiam); *see also United States v. Makozy*, No. 21-3223, 2022 WL 1535269, at *1 (3d Cir. May 16, 2022) (per curiam) (explaining that a writ of

audita querela "is a limited remedy"). A writ of audita querela "is available in criminal cases to the extent that it fills in gaps in the current system of post-conviction relief." *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009). A gap in the post-conviction relief system "must be systemic and not merely reflect a defendant's inability to use available remedies." *United States v. Georgiou*, 800 F. App'x 136, 139 (3d Cir. 2020); *see also Potts*, 765 F. App'x at 640 ("[W]e have yet to find a gap in the federal post-conviction framework that needed to be filled with a writ of audita querela."). Where a petitioner's "claims could have been raised on appeal or under § 2255, the writ[] of . . . audita querela [is] not available to him." *United States v. Banks*, 747 F. App'x 41, 42 (3d Cir. 2019) (per curiam). In addition, while writs of coram nobis are generally understood to attack a conviction as invalid when rendered, "[t]he purpose of a writ of *audita querela* is to challenge a judgment that although correct when rendered, is now infirm due to subsequent events[,] . . . such as an intervening change in law." *Dickey v. Allbaugh*, 664 F. App'x 690, 694 (10th Cir. 2016); *see also Rawlins*, 714 F.3d at 1196. A writ of audita querela "is available only where the petitioner raises a (1) valid legal objection; (2) to a judgment that arises after that judgment is entered; and (3) that is not redressable by some other means." *Muirhead v. Att'y Gen. of U.S.*, 262 F. App'x 473, 474 (3d Cir. 2008).

As an initial matter, Petitioner appears to argue that his conviction was *never* valid, not that it has since been rendered invalid by an intervening change in law. Nevertheless, the Court concludes that *Counterman* does not provide a ground for relief based on an intervening change in the law. While the Third Circuit has not yet addressed whether *Counterman* can be applied retroactively, the Fourth Circuit recently held that "*Counterman* announced a new rule of constitutional law that applies retroactively." *In re Rendelman*, 129 F.4th 248, 254 (4th Cir. 2025). Here, the Court need not decide whether *Counterman* applies retroactively. Assuming *arguendo*

that *Counterman* applied retroactively to Petitioner's case, relief still would not be warranted.  In *Counterman*, the Supreme Court held that for prosecutions of crimes involving true threats, the Government must prove that the defendant possessed at least a reckless *mens rea* when making the threats.  600 U.S. at 73, 82.  Here, the statute that Petitioner was convicted of violating expressly requires *intentional* conduct, which is a more demanding mental state than recklessness. *See* 18 U.S.C. § 115(a)(1)(A)–(B) (requiring "intent to impede, intimidate, or interfere"); ECF No. 188 at 26, 30–31 (proposing jury instructions on intent); *see also United States v. Garnes*, 102 F.4th 628, 637 (2d Cir. 2024) (explaining that 18 U.S.C. § 115(a)(1) "requires an additional, even more demanding mental element – the intent to impede, intimidate, interfere with or retaliate against"); *United States v. Woollacott*, No. 25-5723, 2026 WL 1683743, at *6 (6th Cir. June 10, 2026) ("[E]ven if we assume that the jury found . . . that [defendant] was guilty only because he 'conveyed his intent' to commit violence, the jury necessarily found that [defendant] acted with more than recklessness"); *United States v. Butler*, 772 F. Supp. 3d 668, 686 (W.D. Va. 2025) (finding that where threats "evince[d] the more culpable *mens rea* of purpose to achieve the desired result, they easily satisfy *Counterman*'s less demanding recklessness standard").  *Counterman* is thus of little assistance to Petitioner, and he has not otherwise demonstrated that his conviction should be invalidated.  Accordingly, the Court declines to issue a writ of audita querela.

III.    **CONCLUSION**

For the foregoing reasons, the Court will deny the Petition (ECF No. 301).  An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____

**CHAD F. KENNEY, JUDGE**